**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ALONZO JENKINS, | : | |
| Plaintiff, | : | Civil Case No. 09-2145(FSH) |
| v. | : | **O P I N I O N** |
| LARRY GLOVER, et al., | : | |
| Defendants. | : | |

**APPEARANCES:**

Alonzo Jenkins, Pro Se
# 296308/417094A
Northern State Prison
168 Frontage Road
Newark, NJ 07114-2300

**HOCHBERG, District Judge**

Plaintiff, Alonzo Jenkins, currently incarcerated at the Northern State Prison, Newark, New Jersey, seeks to bring this action in forma pauperis, without prepayment of fees, pursuant to 28 U.S.C. § 1915. Based on Plaintiff's affidavit of indigence and institutional account statement, the Court will grant his application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a), and order the Clerk of the Court to file the complaint.

At this time, the Court must review the complaint, and amended complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether they should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the following reasons, Plaintiff's complaint and amended complaint will be dismissed.

## BACKGROUND

Plaintiff seeks to sue a number of employees of the New Jersey Department of Corrections. Plaintiff states that on March 9, 2006, while housed at the Northern State Prison he was assigned to the work/program assignment in Institutional Food Service by the Institutional Classification Committee. (Complt., ¶ 10). On April 4, 2009, while working in the Officers' Dining Room, an officer asked him for more food. He informed the officer that he was only allowed to serve one portion per person, as per defendant McGrady, the Assistant Food Service Supervisor, and that the officer would have to ask the Institutional Training Instructor ("I.T.I."). Defendant I.T.I. Davis ordered Plaintiff to give the officer whatever he wanted. Plaintiff told Davis that he did not want to get into trouble with McGrady, and Davis told him to "shut the f*ck up and do what I tell you to do." Plaintiff asked Davis not to disrespect him and not to speak to him in that manner. Plaintiff reported to defendant I.T.I. Supervisor Tunez what Davis had said to him. Tunez told Plaintiff that since Davis is an I.T.I. she could do whatever she wanted to . Plaintiff told Tunez that McGrady had told him to speak to Tunez. (Complt., ¶ 11). Plaintiff also spoke to

defendant Donaldson, a corrections officer, and was told "not to worry about it, because it was a small thing." (Complt., ¶ 12).

The next day, Plaintiff worked in the Officers' Dining Room without incident. (Complt., ¶ 13). However, the day after that, on April 6, 2009, he reported to the Officers' Dining Room and was told that he no longer worked there based on the incident from April 4. Plaintiff was informed that on April 5, the day after the incident, Davis had written a report against him. (Complt., ¶ 14). On April 6, Plaintiff filed a grievance concerning the incident. (Complt., ¶ 15). On April 8, Plaintiff was told by defendant Sapp, the Associate Administrator, that because he did not receive an institutional disciplinary charge, "this was a violation of procedures." (Complt., ¶ 16).

On April 9, Plaintiff asked McGrady why he was removed from the Officers' Dining Room. McGrady told Plaintiff that he did not have to tell him why, and that now he was assigned to the serving line in the trailer. Plaintiff told McGrady that because of physical injuries he would not be able to push the food cart back and forth, and McGrady told him that he had checked into the matter already, and inferred that Plaintiff was not restricted from pushing the cart. (Complt., ¶ 17).

Therefore, on April 9, Plaintiff started his new position pushing the food cart from the housing unit to the gate. However, the next morning, he woke up with pain in his lower back

and on the right side of his body.  He informed the officer and was told to report to the hospital.  He was seen by a nurse and told that he had re-injured his lower back.  He was given a three-day medical "lay-in" from work and scheduled for a doctor's appointment.  (Complt., ¶¶ 18-19).

On April 14, 2009, McGrady told Plaintiff that Plaintiff had fabricated the story about not being able to push the food cart, and that there was no restriction on him, and that if he went back down to the hospital complaining of back pain he would be fired from kitchen serving in the trailer.  (Complt., ¶ 21).  That same day, Plaintiff was seen by the doctor and given a seven-day lay-in from work, a prescription for motrin, and a ninety-day restriction on pushing a food cart.  Upon hearing of the restriction, McGrady fired him from the serving line in the trailer.  (Complt., ¶ 22).

Plaintiff was informed the next day that he was assigned to tier sanitation.  Plaintiff complained that he had not been before the Classification Committee for re-classification, and he was told by defendant Vargars that he did not need to be reclassified.  Plaintiff had experienced on-going problems with defendant Vargars and had written several letters to defendant Sapp and others complaining about him.  (Complt., ¶¶ 23-24).

On April 21, 2009, Plaintiff was told to report to the area supervisor's office and was told that it was his last day of

medical lay-in, and that he was assigned to tier sanitation. Plaintiff asserted that he was waiting for formal reassignment, but was told he did not need it. On April 25, 2009, Plaintiff received a notification from the Institutional Classification Committee that he was reassigned to tier sanitation, without a hearing or a decision explaining the change. (Complt., ¶¶ 25-27).

Plaintiff asserts that the incidents described above violated his constitutional rights, and violated various state and federal statutes. Plaintiff asks for monetary and other relief.

In Plaintiff's amended complaint, submitted on June 1, 2009, Plaintiff adds defendant Nykum to the above-described claims concerning his employment. Plaintiff states that on April 21, 2009, defendant Nykum informed him that it was his last night for medical lay-in and that he was assigned to tier sanitation. (Am. Complt., ¶¶ 1,4).

Plaintiff also asserts claims against defendants Skipper, a mail room officer, and defendant Day, the mail room supervisor. Plaintiff alleges facts indicating that these two officers, along with other named defendants, are violating his rights because they require Islamic religious prayer oils to be bought through Iman Musa, the Islamic Chaplain. Plaintiff objects to this procedure because Iman Musa has a business interest in the

company supplying the oils to him for the prisoners (Am. Complt., ¶¶ 14(a), 14(d), 14(e)); because there is a 25 cent surcharge on each purchase of oil through Iman Musa (Am. Complt., ¶ 14(f)); there are no proper receipts when purchasing oil through Iman Musa (Am. Complt. ¶¶ 14(h), 14(i)); and because a memo had been issued informing prisoners that they must buy from source of sale, and with source of sale there is no surcharge (Am. Complt., ¶¶ 5, 14(g)).  Plaintiff asks for monetary and other relief in his amended complaint.

## DISCUSSION

### A. Standard of Review

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act ... many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. § 1915A, that a court must dismiss, at the earliest practicable time, actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See id.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to pass muster under the Rule 8 pleading standard. See Phillips v. County of Allegheny, 515 F.3d

7

224, 230-34 (3d Cir. 2008). The Court of Appeals explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage[ ]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

Phillips, 515 F.3d at 234 (internal citations omitted). See also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (when assessing the sufficiency of a complaint, the Court must distinguish factual contentions- which allege behavior on the part of the defendant, that, if true, would satisfy one or more elements of the claim asserted- and "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements").

**B.  42 U.S.C. § 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.   Plaintiff's Complaint Will Be Dismissed.**

    1.   Claim Regarding Job Placement

Plaintiff claims that his constitutional rights were violated because he was reassigned from his job without reason, and because he was working in a "hostile work environment." (Complt., ¶¶ 26, 27, 29, 31, 32).

However, an inmate has no property or liberty interest protected by the Constitution in obtaining employment.  See James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir.), cert. denied, 493 U.S. 870 (1989); Johnson v. Fauver, 559 F. Supp. 1287, 1290 (D.N.J. 1983)(Gerry, J.).  Any property or liberty interest must be created by statutes or regulations.  See Hewitt v. Helms, 459 U.S. 460, 472 (1983).  While New Jersey law states that "inmates of all correctional . . . institutions . . . shall be employed,"

courts have held that this language does not create a liberty or property interest in employment for inmates.  See N.J.S.A. 30:4-92; Little v. Terhune, 200 F. Supp.2d 445, 450 & n.4 (D.N.J. 2002)(Cooper, J.)("fact that New Jersey may have granted prisoners access to [educational and work] programs does not necessarily grant inmates a liberty or property interest in them"); Johnson, 559 F. Supp. at 1290-91 (statutory scheme does not "create a liberty or property interest in a right to work, despite statutory language that all inmates 'shall be employed'"); Rowe v. Fauver, 533 F. Supp. 1239 (D.N.J. 1982) (despite statutory language, "corrections officials have considerable discretion in providing or not providing work opportunities even where the health, strength and mental capacity of inmate are not involved, and thus inmate did not possess a state-created 'liberty' interest in prison employment").

Therefore, because Plaintiff had no liberty interest, or constitutional right to employment, Plaintiff has not alleged facts indicating a constitutional violation.  Thus, all claims relating to Plaintiff's employment will be dismissed for failure to state a claim upon which relief may be granted.

2.   Plaintiff's Claim Regarding Medical Condition

Plaintiff claims that his reassignment to the serving line by McGrady violated the Americans with Disabilities Act of 1990,

and constituted deliberate indifference to his medical needs because Plaintiff had a medical condition.  (Complt., ¶ 30).

Liberally construing the complaint, Plaintiff asserts a claim under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, which provides that "no qualified individual with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  "To establish a prima facie case for these statutes [the ADA and Rehabilitation Act[1]] the following elements must be established: '(1) [plaintiff] is a qualified individual with a disability; (2)[he] was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'"  Scherer v. Pennsylvania Dept. of Corrections, 2007 WL 4111412 at *8 (W.D. Pa. Nov. 16, 2007) (quoting Calloway v. Boro of Glassboro Dept. of Police, 89 F. Supp.2d 543, 551 (D.N.J. 2000)).

---

[1] Section 504 of the Rehabilitation Act prohibits discrimination against qualified persons with disabilities in any program or activity receiving federal financial assistance. See 29 U.S.C. § 794.

11

Covered public entities are defined to include state and local governments and their agencies and instrumentalities. 42 U.S.C. § 12131(1). "Public entities" encompassed by Title II of the ADA include correctional facilities. See Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998); see also Chisolm v. McManimon, 275 F.3d 315 (3d Cir. 2001) (providing guidance as to the provision of services under the ADA to deaf inmates).

"Qualified" persons include individuals "with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meet the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Private citizens are authorized to bring suit for damages against such state and local governments, their agencies and instrumentalities, and state officers in their official capacities. See 42 U.S.C. § 12133.

In this case, however, Plaintiff has not alleged facts indicating that he suffers from a disability. Plaintiff does allege facts indicating that he suffered back problems. However, Plaintiff also points out that defendants checked into his medical issues prior to reassigning him from the Officers' Dining Room to the trailer for food service, and found that there were

12

no restrictions on Plaintiff.  Nor does Plaintiff assert that there was a medical restriction for him preventing him from working in the trailer; rather, Plaintiff alleges facts indicating that because he suffered back problems, he preferred not to push the food cart to the trailer.  Thus, Plaintiff has not alleged facts indicating that he suffered a disability to qualify for relief under the ADA.

Additionally, Plaintiff has not alleged facts indicating that he was excluded from the work program based on his disability.  In fact, Plaintiff alleges facts indicating that because of his medical problems, he was reassigned to tier sanitation duty.

Further, Plaintiff has not alleged facts indicating deliberate indifference on the part of McGrady in reassigning him to the trailer food service duty.  As Plaintiff alleges, McGrady asserted that he looked into Plaintiff's situation to determine that there was no restriction on Plaintiff.  That Plaintiff became injured does not render McGrady's actions deliberately indifferent to Plaintiff's medical needs.

Therefore, Plaintiff's claims must be dismissed, for failure to state a claim upon which relief may be granted.[2]

---

[2]  This Court notes that Plaintiff's claim that defendant Donaldson "breach[ed] security procedures" and violated his rights by failing to report defendant Davis to the supervisor is without merit, as this Court cannot ascertain any violation of

3. <u>Plaintiff's Religious Items Claim</u>

Plaintiff asserts that he should be able to directly purchase Muslim prayer oils from a source of sale distributor, instead of having to purchase the oil through Iman Musa, pay the 25 cent surcharge, and have the oils sent to Iman Musa for distribution.

Judge Simandle of this Court recently reviewed similar claims concerning Southern State Correctional Facility's ("SSCF") practice of having prayer oils distributed to prisoners through Iman. Citing <u>Turner v. Safley</u>, 482 U.S. 78, 89-91 (1987), Judge Simandle found no constitutional violation with the practice. The Judge held:

> Turning to Plaintiff's claim that the prison's interference with his access to six bottles of religious oils violated his First Amendment rights, the Court finds that Plaintiff is not likely to succeed on the merits of his claim. As Plaintiff's submissions in support of this claim make clear, the prison officials at SSCF have not withheld permission from Plaintiff to possess in his cell precisely the same religious oils underlying this claim-in response to Plaintiff's request that he be permitted "to purchase oils and retain them in [his] possession," Imam Shakur stated, "I find no problem in your request as I have stated during the interview. Place your order/I'll approve." Instead, Plaintiff's claim appears to assert a First Amendment right to have the oils sent to him directly, rather than having them mailed to the prison's chaplain for distribution; Plaintiff's reply to Imam Shakur's statement that the oils would have to be mailed to the chaplain's office was that "[a]s a Muslim, you do not

---

Plaintiff's rights by this refusal to act. (Complt., ¶ 28).

14

provide Santeria artifacts, so I can not see how my products have to come from you."

Under the first step of its free exercise inquiry, while the Court has no reason to doubt the sincerity of Plaintiff's religious beliefs as a general matter, it would be hard-pressed to find that Plaintiff has a "sincerely held ... religious" belief that his religious oils must be mailed to him directly rather than being mailed to the prison chaplain for subsequent distribution. DeHart, 227 F.3d at 51-52. In other words, Plaintiff's request to obtain and possess religious oils was not denied, but, instead, was granted subject to the most negligible of caveats that they be sent to Imam Shakur before being distributed to Plaintiff. There is nothing in the record from which the Court could conclude that Plaintiff's desire to receive his religious oils by direct mail, rather than through the chaplain's office, is fueled by a sincerely held religious belief, rather than a simple personal preference. Id.

Even if the Court were to conclude that Plaintiff's preference for direct mailing is motivated by a sincerely held religious belief, however, the requirement that the religious oils be mailed to the prison chaplain before being distributed to Plaintiff easily passes muster under the Turner factors. First, the requirement manifestly "bears a valid, rational connection to a legitimate and neutral governmental objective." Requiring that religious articles be sent to the prison's chaplain is an utterly sensible security measure that serves the NJDOC's compelling interest in regulating and controlling the items sent to inmates in its custody. Second, in light of the exceedingly minimal inconvenience to Mr. Vazquez's religious practices that the policy imposes, Mr. Vazquez inarguably has "alternative means of exercising his [Santeria] ... beliefs generally." That is, Plaintiff can engage in precisely the same religious practices with the oils that he would be able to perform if the policy were not in place, subject to the marginal inconvenience of having to retrieve his orders from an intermediary in the chaplain's office. Third, the Court finds that permitting Plaintiff to receive religious articles through the mail directly "would have a deleterious impact on other inmates, guards, and the allocation of prison resources generally." If

15

> Plaintiff were permitted to receive religious articles in the mail directly, other inmates would doubtless seek to avail themselves of the same privilege, which would undermine the compelling institutional security interest previously recognized. Finally, there are no "alternatives ... that fully accommodate[ ] the prisoner's rights at <u>de minimis</u> cost to valid penological interests," because the existing policy does fully accommodate Plaintiff's rights-SSCF permits him to obtain his religious oils and possess them in his cell, and merely requires that he place and retrieve his requests from the chaplain's office.
>
> In summary, the Court finds that Plaintiff is unlikely to prevail on the merits of proving that SSCF's policy of requiring that orders for religious articles be mailed to the chaplain's office violates his First Amendment rights.

<u>Vasquez v. Brown</u>, 2008 WL 4792684 at **9-10 (D.N.J. Oct. 30, 2008)(unpubl.)(internal citations and footnote omitted).

This Court agrees with Judge Simandle's analysis, and finds that Plaintiff has not alleged facts indicating a violation of his constitutional rights by Northern State Prison for purchase of the oils. Nor does this Court find that the surcharge violates Plaintiff's constitutional rights, as it does not deprive Plaintiff of life's necessities under the Eighth Amendment, <u>see</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347-48 (1981)(finding that a plaintiff may satisfy the objective component of a conditions of confinement claim if he can show that the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter,

16

sanitation, medical care, and personal safety), or under the Due Process Clause of the Fourteenth Amendment, as Plaintiff is noticed of the surcharge, and voluntarily purchases the items. <u>See</u>, <u>e.g.</u>, <u>Christiansen v. Clarke</u> 147 F.3d 655, 657 (8th Cir. 1998) (rejecting due process challenge to prison regulation imposing deduction for maintenance costs from prisoners' earnings in work release program); <u>Myrie v. Commissioner</u>, 267 F.3d 251 (3d Cir. 2001)(holding 10% canteen surcharge for victim's fund was not an excessive fine and did not violate the inmates' constitutional rights); <u>Reynolds v. Wagner</u>, 128 F.3d 166 (3d Cir. 1997)(holding charging a small co-payment for unnecessary prison medical care was not unconstitutional); <u>Robinson v. Illinois State Correctional Ctr.</u>, 890 F. Supp. 715, 718 (D. Ill. 1995)(holding inmates have no constitutional right to purchase anything from a commissary); <u>Jones v. Houston</u>, 2007 WL 3275125 at *11 (D. Neb. Nov. 2, 2007)(5% service charge on canteen purchases does not violate inmate's rights); <u>Chapdelaine v. Keller</u>, 1998 WL 357350 at *14 (N.D.N.Y. 1998)(holding that minimal over-pricing in the prison commissary did not rise to the level of a constitutional violation).

Thus, Plaintiff's claims must be dismissed, for failure to state a claim upon which relief may be granted.

## **CONCLUSION**

Based upon the foregoing, Plaintiff's complaint and amended complaint will be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  The Court will file an appropriate order.

S/ Faith S. Hochberg
FAITH S. HOCHBERG
United States District Judge

Dated:   July 30, 2009